UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

In re:

Peggy Ann Soullier,   Case No. 13-40896 -wsd
                      Chapter 13
            Debtor.   Hon. Walter Shapero
_____/

# OPINION DENYING DEBTOR'S MOTION FOR ORDER ALLOWING DEBTOR TO TRANSFER PROPERTY *NUNC PRO TUNC* TO APRIL 20, 2013

Peggy Soullier ("Debtor") filed this Chapter 13 petition on January 17, 2013 and the Court confirmed her plan on April 20, 2013. Among her listed assets was a condominium at 24666 Chalk Farm Rd. W., Warren, MI 48091 (hereinafter, "the Condominium") that Debtor described in her Schedule A as "Former Marital Residence" in which she owned a "1/3 Dower Interest Subject to Mortgage". Debtor listed on her Schedule D a mortgage to Chase Bank on the Condominium, which she classified as a joint claim and again described the Condominium as "Former Marital Residence". Debtor's Schedule H listed Donald R. Soullier (her spouse) as a co-obligor on the Chase Bank mortgage. After their estrangement, Mr. Soullier (but not Debtor) apparently continued to live in the Condominium for some time, until he vacated it.

On August 21, 2015, Mr. Soullier (apparently Debtor's then-separated but not divorced spouse), filed a Chapter 7 case (15-32048-dof) in which he listed (1) on Schedule A, the Condominium as being owned by him in fee simple, but jointly; (2) on Schedule D, a mortgage to Chase Bank on the Condominium, along with "English Colony Condo Association" (hereinafter, "the Association") as a secured party having a statutory lien for $6,133; (3) on Schedule F, the Association as an unsecured creditor in that same amount, said to arise out of a

"Civil Judgment for Condominium assessments, late charges and attorney fees"; and (4) on Schedule H, Peggy Soullier, who is described there as "Spouse – Separated", as a co-debtor on both the Chase Bank mortgage and the debt to the Association. In Mr. Soullier's case, an order dated October 5, 2015 granted relief from the automatic stay in relation to the indicated mortgage to Chase Bank's assignee. There is nothing in the record as to whether or not the mortgagee thereafter effected a completed foreclosure. Peggy Soullier, the Debtor in this case, thus and for whatever that might be worth, had notice of and was an interested party in her spouse's case. The Association's Response to Debtor's pending Motion has attached to it a statement of account covering the period January 1, 2014 to October 13, 2015, totaling $6,178.84, with $5,778.06 being shown to have been due as of the filing date of Mr. Soullier's case.

Debtor did not list the Association on her own schedules, which as noted, claims unpaid condominium association fees, assessments, and costs on the Condominium. The Association apparently had no notice of Debtor's bankruptcy filing, and Debtor's confirmed plan does not deal with a claim of the Association in any way. Debtor states she was unaware that such condominium dues were assessed, and was unaware of the Association's existence, at least as of the filing date of her case. The Order Confirming Plan (Dkt. 40) provided:

> The Debtor's interest in the property located at 24666 Chalk Farm Rd. W., Warren, MI 48091, is hereby surrendered and the automatic stay is hereby terminated. Upon termination of the automatic stay, the provisions of F.R.Bankr.P. 3002.1 shall no longer apply with respect to the property as to creditor JP Morgan Chase Bank, N.A.

No party in interest sought relief from the automatic stay as to the Condominium, either prior or subsequent to confirmation.

Debtor filed the present Motion for Order Allowing Debtor to Transfer Property *Nunc Pro Tunc* to April 20, 2013 (Dkt. 74), the asserted basis for which is that it was the Debtor's clear

intent to surrender the Condominium, as evidenced primarily by the above-quoted language included in the Order Confirming Plan. Debtor therefore argues that it would be "inequitable" for her to be liable to the Association for the condominium fees that have accrued after the filing of her bankruptcy petition. She seeks the Court's permission to execute a quitclaim deed to her estranged husband *nunc pro tunc* to April 20, 2013, the date her Chapter 13 plan was confirmed, and thus a date prior to the indicated accrual of those condominium fees. Debtor relies primarily on *In re Spencer,* 437 B.R. 563 (Bankr. E.D. Mich. 2010). The Association relies on the District Court opinion reversing that opinion in part: *In re Spencer,* 457 B.R. 601 (E.D. Mich. 2011).

Initially, the Court finds that the surrender of the Condominium, as a matter of law and under either of the two cited *Spencer* opinions, requires something more than what in fact occurred here. The Bankruptcy Court's *Spencer* opinion stated:

> In response, Maple Forest argues that a mere declaration of surrender in a Chapter 13 plan is insufficient to accomplish surrender and, in any event, does not warrant a determination that Maple Forest may not assert a claim for damages against the Debtor.
>
> The Court agrees with Maple Forest. First, it is not entirely clear to the Court exactly *how* the Debtor surrendered the condominium to Maple Forest. The Debtor's plan is silent on the details of the surrender and Maple Forest, which initially objected to the surrender, withdrew that objection and any other objections it had to confirmation of the Debtor's plan, leaving the Court to wonder whether Maple Forest assented to the surrender. Those cases that have examined the requirements for a surrender under § 1325(a)(5)(C) have ordinarily required some affirmative act, and not just a declaration of surrender, in order to accomplish and effectuate the surrender. The word "surrender" is not defined in the Bankruptcy Code. But, "[t]he operative phrase in § 1325(a)(5)(C), 'surrenders the property securing such claim to such holder,' makes it clear enough that the 'surrender' spoken of entails the secured creditor ultimately holding all rights, including the right of possession, in the property securing the claim." *I.R.S. v. White (In re White),* 487 F.3d 199, 205 (4th Cir.2007) (internal quotation marks and citations omitted). "[T]he term 'surrender' differs from 'abandonment' .... '[S]urrender' is a contractual act and occurs as a result of the consent of both parties. It appears that an abandonment may include a surrender, although a surrender may not necessarily constitute a total abandonment." *In re Zak,* 361

B.R. 481, 486 (Bankr.N.D.Ohio 2007) (internal quotation marks and citations omitted).

437 B.R. at 576-77. The District Court's *Spencer* opinion similarly stated:

> Under the Bankruptcy Code, Debtor's "surrender" merely establishes that Debtor will not oppose the transfer of collateral. In § 1325(a)(5)(C) of the Bankruptcy Code, as in § 521(a)(2), "the most sensible connotation of 'surrender' in the present context is that the debtor agreed to make the collateral available to the secured creditor." Absent some further action—such as foreclosure, deed in lieu of foreclosure, or short sale of the property—surrender does not divest a debtor of ownership and its obligations. Although Debtor may have agreed not to oppose the seizure of the collateral by secured creditors, he has not thereby transferred title to the creditors. Debtor remained the owner of the property and, therefore, remained obligated to pay periodic assessments by the Association arising from a covenant running with the land.

457 B.R. at 612-13 (internal citations omitted). First, pursuant to each of the foregoing cases, the language of Debtor's Order Confirming Plan, and despite what Debtor may have thought was the case otherwise, is simply insufficient to amount to a legally effective surrender. Second, the Court notes that the Michigan Condominium Act provides that "[a] co-owner shall not be exempt from contributing as provided in this act by nonuse or waiver of the use of any of the common elements or by abandonment of his or her condominium unit." Mich. Comp. Laws § 559.169(4). It is also to be noted that Debtor's Schedule A described her then interest in the Condominium as a "1/3 Dower Interest Subject to Mortgage", despite the apparent fact that Debtor and Mr. Soullier initially took joint title to the Condominium on December 21, 2006, and the Court has not been presented with any title transfer documents negating that, or that might itself afford a basis for Debtor's lack of liability. It thus appears in fact, at least on this record, that Debtor technically was and may remain a joint title owner with Mr. Soullier. If that is so, absent some other facts, proceedings, or conclusions not opined on by this or some other Court, it may be argued that she may be liable for some amount(s) to the Association based on some sort of joint obligation arising from that joint ownership – a joint obligation that her spouse may have been

discharged from, in whole or in part, in his own bankruptcy. That said, the Court concludes that Debtor's Motion identifies no statutory or other basis for the relief requested, other than to avoid what she and others might view as an inequitable result. For these reasons, the Court will deny Debtor's Motion.

In denying Debtor's Motion, as noted, the Court does not, and need not at this time, opine on issues such as whether the Association's asserted claims are postpetition or prepetition claims, or what may be the effects (if any) of Mr. Soullier's bankruptcy discharge or any foreclosure proceedings instated or completed in connection with the mortgage on Debtor's liability for the indicated condominium fees. The Association shall present an appropriate order.

**Signed on March 16, 2016**

                                        **/s/ Walter Shapero**
                                  **Walter Shapero**
                                  **United States Bankruptcy Judge**